IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>vs.<br><br>JUAN ANTONIO VAZQUEZ,<br><br>      Defendant. | ORDER AND<br>MEMORANDUM DECISION<br>GRANTING MOTION FOR<br>COMPASSIONATE RELEASE<br><br>Case No. 2:06-CR-196-TC |

  Prisoner Juan Antonio Vazquez moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), asking the court to reduce his twenty-year sentence in the custody of the United States Bureau of Prisons (BOP) to fifteen years.[1] To date, he has served approximately fourteen years and seven months of that sentence. Mr. Vazquez bases his motion on amendments made to 18 U.S.C. § 3582 and 21 U.S.C. § 851 by the First Step Act and on his fear that he is particularly vulnerable to COVID-19. Def.'s Mot. to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (ECF No. 164) (hereinafter "Def.'s Mot.").

  Given the record before the court, Mr. Vazquez has satisfied his burden to show extraordinary and compelling reasons to release him and that the balance of sentencing factors

---

[1] A sentence reduction to fifteen years means that Mr. Vazquez will be immediately released based on the good time credits he has earned in custody. See First Step Act Relief Eligibility Report at 3 ¶ 2 (ECF. No 167).

1

set forth in 18 U.S.C. § 3553(a) and 18 U.S.C. § 3142(g) warrant his release. Accordingly, his motion (ECF No. 164) is GRANTED.

## FRAMEWORK FOR COMPASSIONATE RELEASE ANALYSIS

Mr. Vazquez brings his pro se motion[2] under 18 U.S.C. § 3582, as amended by the First Step Act[3] (often referred to as the compassionate release statute). According to the statute, the court "may reduce the term of imprisonment… after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that … extraordinary and compelling reasons warrant such reduction ... and that such a reduction is consistent with applicable policy statements by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The factors under 18 U.S.C. § 3553(a) include the nature of the crime, the defendant's characteristics and history, the danger to the public, and the sentencing range.

Before Congress passed the First Step Act, only the Bureau of Prisons (BOP) could bring a motion under § 3582 requesting that the court reduce a prisoner's sentence. Now the court may consider the issue either upon a motion from the BOP or "upon motion of the defendant after the defendant has fully exhausted all administrative rights" with the BOP. Id. § 3582(c)(1)(A). If the BOP has not filed a motion on the defendant's behalf, the defendant, to be eligible for the court's consideration of his motion for release under Act, must have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility,

---

[2] Because Mr. Vazquez acts pro se, the court liberally construes his motion. See Eldridge v. Berkebile, 791 F.3d 1239, 1243 n.4 (10th Cir. 2015).
[3] Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).

whichever is earlier[.]" Id.

As noted above, the statute requires that a sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission[.]" Id. That phrase has given rise to disagreement about the court's discretion to define "extraordinary and compelling reasons."

The statute does not define "extraordinary and compelling reasons." But the United States Sentencing Commission (USSC) defined it before Congress passed the First Step Act, when Congress mandated that the USSC, "in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, <u>shall describe what should be considered extraordinary and compelling reasons</u> for sentence reduction, including the criteria to be applied and a list of specific examples…." 28 U.S.C. § 994(t) (emphasis added).

Following the mandate, the USSC, in the United States Sentencing Guidelines (USSG), issued that policy statement in USSG 1B1.13, which describes the circumstances allowing a court, upon motion by the BOP, to reduce a defendant's term of imprisonment. The Policy Statement requires a finding that "[e]xtraordinary and compelling reasons warrant the reduction" or that "the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned[.]" USSG 1B1.13(1)(A)–(1)(B). In the Commentary Application Notes, the USSC defines "extraordinary and compelling reasons" in terms of the defendant's (A)

3

medical condition,[4] (B) advanced age,[5] (C) family circumstances,[6] or (D) other reasons. USSG 1B1.13 Commentary Application Notes 1(A)–(D). The "other reasons" catch-all provision simply says, "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." USSG 1B1.13 Commentary Application Note 1(D).

The Policy Statement also calls for a conclusion that "[t]he defendant is not a danger to the safety of any other person in the community, as provided in 18 U.S.C. § 3142(g)[.]" USSG 1B1.13(2). And, along similar lines, the Policy Statement requires the court to balance the § 3553(a) factors.

The Policy Statement has not been amended since the First Step Act was passed, so the USSC has not yet weighed in on the change. This court has held, in a non-COVID-19 case, that the Policy Statement does not curtail its discretion to determine what circumstances are extraordinary and compelling under § 3582. In United States v. Maumau, this court

> join[ed] the majority of other district courts that have addressed this issue in concluding that it has the discretion to provide Mr. Maumau with relief, even if his situation does not directly fall within the Sentencing Commission's current

---

[4] The "Medical Condition" category applies when the defendant is (1) "suffering from a terminal illness," (2) "suffering a serious physical or medical condition," (3) suffering a serious functional cognitive impairment," or (4) "experiencing deteriorating physical or mental health because of the aging process," and the condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG 1B1.13 Commentary Application Note 1(A)(i)–(ii).
[5] The "Age" category requires that "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." USSG 1B1.13 Commentary Application Note 1(B).
[6] "Family Circumstances" consist of "(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children," or "(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." USSG 1B1.13 Commentary Application Note 1(C).

4

policy statement. Under the First Step Act, it is for the court, not the Director of the Bureau of Prisons, to determine whether there is an "extraordinary and compelling reason" to reduce a sentence.

No. 2:08-cr-758-TC, 2020 WL 806121, *4 (D. Utah Feb. 18, 2020), stayed pending appeal, No. 20-4056 (10th Cir. June 1, 2020). In this and other districts, courts have reached the same conclusion when addressing motions raising COVID-19-related reasons for release.

> Since the onset of the COVID-19 pandemic, many courts "have agreed that [extraordinary and compelling] reasons exist in cases involving defendants whose serious underlying health conditions place them at an elevated risk of infection and death from COVID- 19 while in custody." United States v. Lopez, No. 18-CR-2846 MV, 2020 WL 2489746, at *2 (D.N.M. May 14, 2020) (unpublished). Of the courts that have reached such a conclusion, several "have based their finding on the Sentencing Commission's catch-all provision for 'other' extraordinary and compelling reasons" in the Application Notes. Id. Conversely, other courts have reached this determination based on "a plain reading of § 3582(c)(1)(A) after concluding that the [relevant] policy statement no longer applies." Id. Either way, "a majority of federal district courts have found . . . that the district court assumes the same discretion as the BOP director when it considers a compassionate release motion properly before it." United States v. Perez, No. 88-10094-1-JTM, 2020 WL 1180719, at *2 (D. Kan. Mar. 11, 2020) (unpublished).

United States v. Wadley, No. 2:18-cr-408-DAK, 2020 WL 3270880, at *2 (D. Utah June 17, 2020) (unpublished).

As evidenced below, the only possible outlet for Mr. Vazquez under the Policy Statement is the "other reasons" category, which does not provide any measurable criteria. Consequently, regardless of whether the court follows the Policy Statement or simply looks to the statute, the analysis of the "extraordinary and compelling reasons" prong is essentially the same.

## ANALYSIS

For the reasons set forth below, the court finds that Mr. Vazquez has established extraordinary and compelling reasons for his early release and that the § 3553(a) and § 3142(g) factors weigh in his favor.

1. **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

To be eligible for the court's consideration of his motion for compassionate release, Mr. Vazquez must have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

On May 27, 2020, Mr. Vazquez submitted a request for release to Warden D. Emerson of North Lake Correctional Facility in Baldwin, Michigan (North Lake). Def.'s Mot. Ex. B. Mr. Vazquez filed his present compassionate release motion on August 31, 2020. As of that filing date, more than thirty days had passed without Mr. Vazquez receiving a response from the warden or BOP. On September 30, 2020, Mr. T. Johns, North Lake's Facility Administrator, denied Mr. Vazquez's request for relief.[7] Pl.'s Opp'n Ex. B. Because Mr. Vazquez's motion was filed with this court several weeks before Mr. Johns denied his request, Mr. Vazquez has satisfied the exhaustion requirement.

## 2. **EXTRAORDINARY AND COMPELLING REASONS**

In Mr. Vazquez's motion, he asserts that he is particularly vulnerable to the COVID-19 disease because he has hypertension and is Hispanic. Def.'s Mot. at 19. He points out that other inmates at North Lake have tested positive for the virus and in several cases have died from the disease. He also notes that living and working conditions at North Lake do not allow the prisoners to follow safety measures necessary to avoid infection.

---

[7] In Mr. John's letter denying Mr. Vazquez's request for release, Mr. John writes "in response to the Compassionate Release/Reduction in Sentence Request dated September 22, 2020." Neither Mr. Vazquez nor the United States discuss a request dated September 22, 2020. As Exhibit B to his compassionate release motion, Mr. Vazquez provides his release request to Warden Emerson. (ECF No. 164-2.) Exhibit B is dated May 27, 2020— accordingly, the court considers May 27, 2020, to be the date that Mr. Vazquez requested release from BOP.

Though the Policy Statement sets forth four categories of extraordinary and compelling circumstances, only category (D), "other reasons," applies to Mr. Vazquez's situation. The "other reasons" category is a better fit for the circumstances created by the COVID-19 pandemic that subjects particular individuals to devastating outcomes. Mr. Vazquez does not suffer from the type of serious medical inflictions described in category (A), he is too young to fit under category (B), and he is not the only available caregiver for minor children or a spouse under category (C).

The existence of the COVID-19 pandemic is not by itself an extraordinary and compelling reason for release, and the existence of infections in the facility where the defendant is incarcerated, without more, is also not a sufficient reason. United States v. Chee, No. 2:05-CR-773-TC, 2020 WL 5258696, at *4 (D. Utah Sept. 3, 2020). But if the defendant is at risk for complications that could lead to serious injury or death if he contracts the virus, that is an extraordinary and compelling reason under the statute. The United States reaches the same conclusion: "If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition satisfies the standard of 'extraordinary and compelling reasons.'" Pl.'s Opp'n at 12 (footnote citation omitted).

According to the CDC, older adults and people with certain underlying medical conditions who contract COVID-19 are at increased risk for severe illness, or even death. CDC, People Who Are At Increased Risk For Severe Illness, Coronavirus Disease 2019 (COVID-19) (last updated Sept. 11, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html. The older the person, the greater the risk. CDC, Older Adults,

Coronavirus Disease 2019 (COVID-19) (last updated Sept. 11, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html.

A person of any age has an increased risk of severe illness if he has one or more of following CDC-identified chronic conditions: cancer; chronic kidney disease; chronic obstructive pulmonary disease; heart conditions such as heart failure, coronary artery disease, or cardiomyopathies; immunocompromised state from a solid organ transplant; obesity (body mass index of 30 kg/m2 or higher but < 40 kg/m2); severe obesity (body mass index ≥ 40 kg/m2); pregnancy; sickle cell disease; smoking; and type 2 diabetes mellitus. CDC, <u>People With Certain Medical Conditions</u>, Coronavirus Disease 2019 (COVID-19) (last updated Dec. 1, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extraprecautions/people-with-medical-conditions.html. Finally, the CDC has determined that the following chronic conditions might put a person at higher risk: moderate-to-severe asthma; cerebrovascular disease; cystic fibrosis; <u>hypertension or high blood pressure</u>; immunocompromised state from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines; neurologic conditions, such as dementia; liver disease; overweight (body mass index > 25 kg/m2, but < 30 kg/m2); pulmonary fibrosis; thalassemia; and type 1 diabetes mellitus. <u>Id.</u> (emphasis added).

Mr. Vazquez is 46-years old and suffers from hypertension, for which he is prescribed Lisinopril. Def.'s Mot. at 19; <u>see also</u> Def.'s Mot. Ex. H. He cites no other underlying medical problems that put him at an increased risk of severe illness if he were to catch COVID-19, though he says the fact that he is Hispanic also increases his risk. The United States argues that Mr. Vazquez's hypertension merely creates a prospective or possible risk that does not rise to the level of an extraordinary and compelling reason for release. Pl.'s Opp'n at 13.

The relationship between hypertension and COVID-19 is not fully understood, and district courts have disagreed about whether a hypertension diagnosis alone will support a request for compassionate release. See United States v. Patterson, No. 13-CR-193, 2020 WL 6485102, at *6 (E.D. Wis. Nov. 4, 2020) (finding that inmate's well-managed hypertension was by itself a sufficient basis for compassionate release); United States v. Richardson, No. 2:17-cr-00048, 2020 WL 3402410, at *3 (E.D. Cal. June 19, 2020) ("Here, Defendant's hypertension alone places him at significant risk of complications."); Segars v. United States, No. 16-cr-20222, 2020 WL 3172734, at *3 (E.D. Mich. June 15, 2020) (granting release where defendant's only CDC-identified preexisting condition was hypertension and explaining that "the diagnosis of hypertension at any level could plausibly lead to more severe COVID") (internal citations omitted); but see United States v. Jacobs, No. CR 5-64, 2020 WL 5704448, at *1 (W.D. Pa. Sept. 24, 2020) ("Courts have indicated that hypertension alone does not generally constitute an extraordinary and compelling circumstance that justifies relief under Section 3582."); United States v. Jones, No. 1:15-cr-00092, 2020 WL 5569824, at *4 (S.D. Ind. Sept. 17, 2020) ("The Court finds, consistent with other district courts, that hypertension and COVID-19 do not qualify as extraordinary and compelling reasons for compassionate release where the defendant does not suffer from other health or age-related risks."). In United States v. Salvagno, the court granted compassionate release because the defendant faced "a heightened risk of developing severe symptoms once infected, due to his hypertension, and may even face a heightened risk of contracting COVID-19 in the first place, due his treatment with Lisinopril." 456 F. Supp. 3d 420, 428 (N.D.N.Y. 2020), reconsideration denied (June 22, 2020).

Here, Mr. Vazquez's hypertension, viewed in the context of the recent, unprecedented spike in COVID-19 cases throughout the country, rises to the level of an extraordinary and

compelling circumstance. COVID-19 rates in a majority of states have increased rapidly over the last several weeks.[8] In the past week, Michigan—where North Lake is located—recorded the sixth-highest number of cases and third-highest number of deaths in the nation. Sarah Rahal, Michigan tops 400,000 COVID-19 cases, nears 10,000 deaths, The Detroit News (Dec. 7, 2020, 2:37 PM), https://www.detroitnews.com/story/news/local/michigan/2020/12/07/michigan-tops-400000-covid-19-cases-nears-10000-deaths/3860427001/. Michigan's ICU beds are at 81% capacity. Id. North Lake reported that 107 of its inmates had contracted COVID-19 and two inmates died from the virus as of September 23, 2020. See First Step Act Relief Eligibility Report at 4 ¶ 8 (ECF No. 167).

Although BOP has taken significant measures to protect the health of the inmates in its charge, "inevitably, some inmates have become ill, and more likely will in the weeks ahead." Pl.'s Opp'n at 6. Prisons like North Lake were not designed to accommodate the type of social distancing that is necessary to prevent the spread of COVID-19. United States v. Jenkins, 460 F. Supp. 3d 1121, 1129 (D. Colo. 2020). As Mr. Vazquez describes in his motion, inmates at North Lake must live in close proximity to one another, sharing cells, microwaves, sinks, toilets, tables, and showers. Def.'s Mot. at 18. Mr. Vazquez is unable to adhere to the CDC's social distancing guidelines while in custody at North Lake.

---

[8] "At least 1,533 new coronavirus deaths and 202,424 new cases were reported in the United States on Dec. 7. Over the past week, there has been an average of 201,778 cases per day, an increase of 17 percent from the average two weeks earlier." Coronavirus in the U.S.: Latest Map and Case Count, N.Y. Times (December 7, 2020, 2:07 PM E.T.) https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html?auth=link-dismiss-google1tap. In thirty-nine states, including Michigan, the number of new COVID-19 cases is higher than ever and predicted to stay high. In ten states, the number of cases remains high but is going down. Only one state has low numbers of new cases that are staying low. Id.

As COVID-19 rates rise, Mr. Vazquez's likelihood of exposure also rises. And though the court acknowledges that medical experts have more to learn about the relationship between hypertension and COVID-19, Mr. Vazquez faces a heightened risk that he will develop serious illness from COVID-19 based on his hypertension alone. Until the medical evidence shows that hypertension has little or no effect on the likelihood of severe illness from COVID-19, the court assumes that the virus poses a higher threat to Mr. Vazquez's health. Mr. Vazquez has shown extraordinary and compelling reasons for his release.

3. **BALANCING OF 18 U.S.C. §§ 3142 AND 3553 FACTORS**

In addition to extraordinary and compelling circumstances, the court finds that a balancing of the factors in 18 U.S.C. § 3553(a) warrants a reduction in sentence for Mr. Vazquez. Those factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed –

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with the needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established … in the guidelines …;

(5) any pertinent policy statement … issued by the Sentencing Commission …;

    (6) the need to avoid unwarranted sentence disparities among defendant with similar records who have been found guilty of similar conduct; and

    (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1)-(7).

The BOP Policy Statement directs the court to first apply the § 3553(a) factors and "then determine if the defendant remains a danger to the safety of any other person in the community as provided in 18 U.S.C. § 3142(g)." USSG 1B1.13(2). § 3142(g) provides balancing factors comparable to those provided in § 3553(a), including:

    (1) the nature and circumstances of the offense charged,

    (2) the weight of the evidence against the person,

    (3) the history and characteristics of the person, including—

        (A) The person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings;

        (B) Whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

    (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Mr. Vazquez was originally indicted for a non-violent offense: one count of a violation of 21 U.S.C. § 841(a)(1), Possession with Intent to Distribute 500 grams or more of

Methamphetamine. (ECF No. 1). Law enforcement found methamphetamine in his vehicle when they stopped his car on Interstate 15. Def.'s Mot. at 3. Following a jury trial, Mr. Vazquez was convicted on the sole count of the indictment (ECF No. 111) and later sentenced to twenty years of imprisonment with a ten-year term of supervised release. (ECF No. 123). Mr. Vazquez's sentence received enhancements based on a prior felony conviction for cocaine trafficking in 1994. (ECF No. 93).

Most significantly, Mr. Vazquez has an immigration detainer and upon release from North Lake he will enter into Immigration and Customs Enforcement (ICE) custody. He will then be immediately deported to Mexico and barred from reentry into the United States. Because he will be deported, he poses little danger to the community. See United States v. Villafuerte-Diaz, No. 19-CR-1063-GPC, 2020 WL 4336349, at *4 (S.D. Cal. July 28, 2020).

Mr. Vazquez's history and characteristics weigh in favor of his release. His criminal record consists of only his present conviction and his 1994 conviction for cocaine trafficking when he was 18 years old. He has strong family ties in Mexico and good relationships with his parents, siblings, and children who reside there. His parents are aging, and he hopes to support them with emotional and financial care, especially during the pandemic. He has taken advantage of many educational and vocational programs while in custody, including Paralegal Studies, Computer, Auto Tech, and Diesel programs. See Def.'s Mot. at 22; Def.'s Mot. Ex. E, F. In Mexico, he plans to seek a career in the Mexican automotive industry and will continue to assist federal prisoners as an online freelance paralegal. Additionally, Mr. Vazquez participated in a six-month drug treatment program in 2017. And though Mr. Vazquez was involved in two disciplinary incidents while in custody—possession of a hazardous tool in 2020 and assault in

13

2015— he has also earned 688 days of good time credit and is projected to earn more. First Step Act Relief Eligibility Report at 3 ¶ 2; 5 ¶ 13.

In examining the need for the twenty-year sentence imposed on Mr. Vazquez, the court notes that passage of the First Step Act in 2018 changed the mandatory minimum sentence for Mr. Vazquez's drug trafficking offense. If Mr. Vazquez were sentenced today for violating § 21 U.S.C. § 841(a)(1), he would be subject to a fifteen-year term. Based on this change, it is clear that Mr. Vazquez's original twenty-year sentence is not necessary to reflect the seriousness of his offense, adequately deter criminal conduct, or protect the public from future crimes.

The court finds the factors under § 3553(a) and § 3142(g) weigh in favor of Mr. Vazquez's early release and that he poses no danger to the community.

## ORDER

For the foregoing reasons, Juan Antonio Vazquez's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (ECF No. 164) is GRANTED.

DATED this 9th day of December, 2020.

BY THE COURT:

*Tena Campbell*
TENA CAMPBELL
U.S. District Court Judge